Davis v. Piggott.

---

WILLIAM M. DAVIS

*v.*

EDWARD PIGGOTT et al.

---

DAVID CRESSMAN, administrator, &c., of Christian Cressman, deceased,

*v.*

DAVID PIGGOTT et al.

---

JAMES D. DE WITT

*v.*

JOHN C. KANIPER.

[Filed February 24th, 1898.]

The mortgagee released a part of the mortgaged premises with notice of a subsequent mortgage upon the unreleased portion, but with an agreement with its holder that the first mortgage should be the first lien upon such unreleased part.—*Held*, that the agreement created a latent equity in favor of a third party and that a subsequent *bona fide* assignee of the second mortgage held it free from this equity.

*Mr. Osiris D. McConnell,* for the complainant Davis.

*Mr. Joseph M. Roseberry,* for the defendant Cressman, administrator.

*Mr. Irwin W. Schultz,* for the defendant De Witt.

*Mr. Henry S. Harris,* for the defendant Paxton.

*Mr. George M. Shipman,* for the defendant Shober.

*Mr. George A. Nichol,* for the defendants Rush and Butler.

REED, V. C.

These are three suits for the foreclosure of three mortgages. They were tried together.

The contest concerns the priorities of the respective mortgages. One Kaniper owned a tract of land containing one hundred and eighty-one and forty-hundredths acres, which will hereafter be styled the one-hundred-and-eighty-one-acre tract. He executed a mortgage upon this tract in March, 1873, to Christian and Levi Cressman, to secure two bonds, each one for $1,000, one held by Christian and the other by Levi Cressman.

In March, 1875, Kaniper made a second mortgage upon the same tract to James D. De Witt for $600.

In March, 1876, Kaniper sold off from the one-hundred-and-eighty-one-acre tract one hundred and eleven and twenty-four hundredths acres (which will hereafter be styled the one-hundred-and-eleven-acre tract), to one Edward Piggott. Piggott gave back to Kaniper a mortgage dated March 14th, 1876, for $2,000, to secure part of the purchase-money. This mortgage was, on June 18th, 1877, assigned to W. H. Lawall.

By a release dated November 29th and acknowledged and recorded December 15th, 1877, Christian and Levi Cressman released the seventy acres still owned by Kaniper after the sale of the one-hundred-and-eleven-acre tract to Piggott, from the lien of their mortgage.

To the release was added an agreement signed by De Witt, the holder of the second mortgage on the whole one-hundred-and-eighty-one-acre tract, and by Lawall, the assignee of the mortgage made by Piggott to Kaniper on the one-hundred-and-eleven-acre tract. This agreement is in the following words:

"We, the subscribers, James D. De Witt and William H. Lawall, who hold subsequent encumbrances on the premises herein described, do hereby consent that the said premises be released and discharged as is herein set forth, and do for the consideration of one dollar to each of us in hand paid agree that in case the said Cressman or either of them attempt to collect the said mortgage or either of the bonds thereby secured, that in that case the said De Witt and Lawall agree that the moneys secured thereby and the interest and costs shall be first collected out of the premises (covered by said mortgages) remaining after the part is released as is therein set forth.

"Dated December 6th, 1877.

"J. D. DE WITT,
"W. H. LAWALL."

This agreement was not recorded.

Afterwards, on March 12th, 1886, the administratrix of Lawall, deceased, assigned the Kaniper mortgage to William M. Davis, the complainant in the first suit.

Kaniper sold of the seventy acres remaining after the sale of the one-hundred-and-eleven-acre tract to Piggott, in four parts as follows:

1. To Thomas Butler, November 14th, 1877, eight and fifty-one hundredths acres, for $153.18, the expressed consideration.

2. To Thomas Miller, on December 15th, 1877, thirty-two and fifteen-hundredths acres for $1,125.25, the expressed consideration.

3. To Rosetta Rush, on December 29th, 1877, nine and seventy-hundredths acres for $175, the expressed consideration.

4. To S. V. Davis, on January 1st, 1878, twenty-two and fifteen-hundredths acres for $725, the expressed consideration.

The order in which these three suits were instituted is as follows:

On April 17th, 1897, William M. Davis filed a bill to foreclose his mortgage upon the one-hundred-and-eleven-acre tract. Among others, he made parties to the suit Cressman, who held

Davis v. Piggott.

the oldest mortgage upon the one-hundred-and-eighty-one-acre tract, and De Witt, the holder of the second mortgage upon the same tract, and Davis, the holder of the Kaniper mortgage upon the one-hundred-and-eleven-acre tract.

The prayer of the bill is that the Davis mortgage may be decreed to be the first lien upon the one-hundred-and-eleven acre tract.

Subsequently, while this suit was pending, James D. De Witt, on July 8th, 1897, filed his bill to foreclose his $600 mortgage upon the whole tract, charging that by virtue of the release executed by the Cressmans his mortgage became a first lien upon the seventy-acre tract and a second lien, next in order after the Cressman mortgage, upon the one-hundred-and-eleven-acre tract. He prays that the whole tract may be sold.

To this suit all the preceding parties are made defendants.

On the same day, namely, July 8th, 1897, the administrator of Christian Cressman filed his bill to foreclose the Cressman mortgage so far as it secured the bond for $1,000 which has been held by Christian Cressman, now deceased. To this bill, Davis, the complainant in the first suit and a defendant in this suit, has filed a plea in abatement and an answer. The plea is grounded upon the pendency of his own suit, in which the same facts are pleaded and in which the administrator of Christian Cressman is a defendant. The answer claims that the lien of the Cressman mortgage upon the one-hundred-and-eleven-acre tract covered by complainant's mortgage, is extinguished by the release given by the Cressmans of their lien upon the seventy acres.

The effect of this plea will be reserved.

I will proceed to consider the relative *status* of the holders of the several mortgages under the facts displayed upon the hearing.

It appears that when Kaniper, the owner of the one-hundred-and-eighty-one-acre tract, sold one hundred and eleven acres from it to Piggott, there were upon the whole tract two mortgages, the oldest, the Cressman $2,000 mortgage, and the next the De Witt $600 mortgage.

By the sale to Piggott of the one-hundred-and-eleven-acre tract, the seventy acres retained by Kaniper became first liable for the payment of these mortgages. Then Piggott gave to Kaniper the $2,000 mortgage on the one-hundred-and-eleven-acre tract. After this mortgage was made the condition of affairs was this: The one-hundred-and-eleven-acre tract became liable, first, for that part of the amount secured to Cressman and De Witt left unpaid after the sale of the seventy acres, and secondly, liable for the $2,000 secured by the mortgage made by Piggott to Kaniper. This was the position of affairs when the Kaniper mortgage was assigned to Lawall.

Afterwards the Cressmans released the seventy acres still owned by Kaniper from the lien of their $2,000 mortgage. They executed this release with knowledge of the existence of the Kaniper mortgage upon the one-hundred-and-eleven-acre tract. Their knowledge of its existence is admitted in the pleadings; for the fact of such knowledge is charged in the bill of Davis and is not denied by Cressman or Paxton, the owners of the Cressman mortgage, both of whom filed answer to the Davis bill. Besides, the release was acknowledged December 15th, 1877. Attached to this release, and upon the same sheet upon which the release is written, is added the agreement already set out, which agreement is dated December 6th, 1877, upon which date it presumably was executed, which was nine days previous to the date of the acknowledgment by the Cressmans of the release. It was executed by Lawall, assignee of the Kaniper mortgage, and by De Witt.

The agreement displays upon its face the existence of subsequent encumbrances held by the signers. In the absence of any explanation by the Cressmans of the circumstances under which this agreement was attached to the release, or any testimony from them, upon the hearing, denying the knowledge which such a condition of affairs would impute to them, it is irresistible that they signed the release with notice of both encumbrances. The legal effect of such a release, with knowledge of the existence of subsequent encumbrances, is entirely settled. It operates to discharge the lien of the releasing mortgagee to the extent of the

value of the part of the mortgaged premises released. *Reilly* v. *Mayer, 1 Beas. 59; Vanorden* v. *Johnson, 1 McCart. 376; Harrison* v. *Guerin, 12 C. E. Gr. 219; Cogswell* v. *Stout, 5 Stew. Eq. 240.*

The release, therefore, standing alone left that portion only of the sum secured by the Cressman mortgage, after deducting the value of the seventy-acre tract, a lien upon the one-hundred-and-eleven-acre tract. It left, secondly, the lien of that portion of the De Witt mortgage, if any, remaining unpaid after the sale of the seventy-acre tract. It left, thirdly, the lien of the Kaniper mortgage, then held by Lawall, for its full amount.

The important question in the case springs out of the agreement made between Lawall, who then owned the mortgage now held by Davis, with the Cressmans at the time the release was executed. The substance of this agreement was to shift the prior lien of the Cressman mortgage which rested upon the whole one-hundred-and-eighty-one-acre tract to the one-hundred-and-eleven-acre tract alone. Its effect was, therefore, to increase the encumbrance of the Cressman mortgage upon the one-hundred-and-eleven-acre tract, and so decrease the security of the holder of the Kaniper mortgage upon the same tract. Inasmuch as this arrangement was approved by the parties concerned at the time, including Lawall, who then owned the Kaniper mortgage upon the one-hundred-and-eleven-acre tract, it was, as between those parties, entirely valid. Had the Kaniper mortgage remained in the hands of Lawall, it would be clear that the Cressmans would be entitled to be first paid from the proceeds of the sale of the one-hundred-and-eleven-acre tract. But Lawall is not the owner of the Kaniper mortgage. After his death his administratrix sold it to Davis, who appears to have been a purchaser for value without notice of the mentioned agreement. The question is whether he, as Lawall's assignee, took the mortgage free from the equity by which Lawall was bound.

The doctrine is rudimental that an assignee of a mortgage takes it subject to all equities, latent or otherwise, in favor of the mortgagor against the mortgagee or his assignee. But the

counsel for Mr. Davis insists that this was a latent equity created by the assignee of the mortgagee of the Kaniper mortgage in favor of a third person, and that Davis, as assignee of such mortgage for value and without notice of this equity, is not chargeable with its existence.

If this is a latent equity created by the mortgagor or his assignee in favor of a third person, under the law of this state, Davis undoubtedly took a title to the mortgage entirely relieved from the effect of this agreement.

In a number of cases, all cited in the opinion of Vice-Chancellor Van Fleet, in the last case upon this subject, namely, *Vredenburgh* v. *Burnet, 4 Stew. Eq. 229,* the distinction between latent equities in favor of the mortgagor and in favor of third persons has been repeatedly stated. In some of those cases, it is true, the equity was one existing in favor of the obligor or mortgagor, and so did not involve a decision upon the point whether latent equities in favor of third persons stood upon the same footing. In the case, however, of *New York Chemical Manufacturing Co.* v. *Peck et al., 2 Halst. Ch. 37,* the question was directly involved, and it was held that a *bona fide* assignee of a mortgage, first in execution and registry, took it free from an agreement between the first and second mortgagees, that the latter should be the prior encumbrancer. In *Vredenburgh* v. *Burnet, supra,* the doctrine that the assignee takes free from latent equities created by the mortgagee in favor of third persons was discussed at length and reasserted, and the case was affirmed by the court of appeals upon the opinion of the vice-chancellor in *4 Stew. Eq. 252.* This case definitely settles the law in this state. The counsel for Mr. Cressman cited, as pertinent decisions modifying this doctrine, the following cases : *Conover* v. *Van Mater, 3 C. E. Gr. 481; Coursen* v. *Canfield et al., 6 C. E. Gr. 92; Atwater* v. *Underhill, 7 C. E. Gr. 599; Mutual Life Insurance Co.* v. *Sturges, 6 Stew. Eq. 328.*

In the opinions in one or more of these cases, expressions may be found to the effect that the assignee of a bond and mortgage takes it subject to all equities, but in none of the cases is the doctrine laid down in *Vredenburgh* v. *Burnet* impugned.

Davis *v.* Piggott.

In *Conover* v. *Van Mater, supra,* the equity was not created by the mortgagee or the assignee in favor of a third person, but existed before the mortgage was made.

In *Coursen* v. *Canfield* and in *Atwater* v. *Underhill, supra,* the respective equities were between the original parties and in favor of the mortgagors.

In *Mutual Life Insurance Co.* v. *Sturges, supra,* while the equity was latent and in favor of third parties, yet the assignee was appointed in bankruptcy proceedings. He was therefore not an assignee for value, and took only the property of the debtor as it existed at the time of the insolvency.

Did this agreement create a latent equity in favor of a third party? The conclusion that it did seems to be unavoidable. Lawall, whose mortgage lien was subject only to that part of the Cressman mortgage which would be left unpaid after the application of the value of the seventy-acre tract, agreed with Cressman that it should become subject to the whole amount due upon the Cressman mortgage. To this extent he agreed that the Cressman mortgage should have a priority to which it was not entitled by execution or record. This equity seems to be exactly similar to that in *Vredenburgh* v. *Burnet, supra.* No inquiry directed to the mortgagor would have disclosed any defence to the mortgage or laid the foundation for estoppel against the mortgagor from asserting a defence; in fact, he had no defence. In my judgment, Davis, who stands in the position of a *bona fide* purchaser for value, holds his mortgage free from this equity.

The result is that the Cressman mortgage is a lien upon the one-hundred-and-eleven-acre tract for so much of the mortgage debt as remains unpaid after the application upon it of the value of the seventy acres released. The value of the released portion must be estimated at the time when the release was executed. *Hill* v. *Howell, 9 Stew. Eq. 25.*

It is proven that the seventy-acre tract was sold by Kaniper by four conveyances, the aggregate consideration of which is the sum of $2,178.43. All these sales were made within fifteen days of the time of the execution of the release, and as no other

41

evidence of value was offered at the hearing, this sum must be taken to have been the value of the tract at that time. This sum exceeds the amount due upon the Cressman mortgage for principal and interest. The one-hundred-and-eleven-acre tract is therefore discharged from any lien on account of the Cressman mortgage.

In respect to the suit brought by them there must be a decree for the defendants. This renders the issue raised by the plea in abatement in this suit unimportant.

The seventy-acre tract should be sold under a decree in the De Witt suit, the portions of that tract being sold in the inverse order of their conveyances by Kaniper, the sale being continued until sufficient is released to pay this mortgage. If all the tract is insufficient to pay the mortgage, then the one-hundred-and-eleven-acre tract must be sold under that decree. If the seventy-acre tract is sufficient, then the one-hundred-and-eleven-acre tract must be sold under a decree in the Davis suit.